## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARINA VASQUEZ MUÑOZ | ) | |
| c/o Employment Justice Center | ) | |
| 1413 K Street NW | ) | |
| Washington, DC 20005 | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| THOMAS J. ROSSI | ) | |
| 4328 Westover Place NW | ) | |
| Washington, DC  20016 | ) | |
| | ) | |
| TERESA ROSSI | ) | |
| 4328 Westover Place NW | ) | |
| Washington, DC  20016 | ) | |
| | ) | |
|      Defendants. | ) | |
| _____ | ) | |

## COMPLAINT AND JURY DEMAND

### Introduction

1.      Plaintiff is a 74 year old trafficking victim who, for the last 18 years, worked at

Defendants' home as Defendants' live-in servant. Plaintiff continued to work for Defendants

under the threat that Defendants would confiscate Plaintiff's home in Guatemala and cause

Plaintiff's extended family to become homeless. At all times, Defendants paid Plaintiff less than

the minimum wage. From approximately July 2006 to November 2012, Defendants did not pay

Plaintiff anything.

2.      Plaintiff brings this action for damages caused by Defendants' threats to confiscate

Plaintiff's home and cause her extended family to be homeless under the forced labor provisions

of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589, 1595. Plaintiff brings

this action for unpaid minimum wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§ 201 *et seq.* and the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C.

Code § 32-1001 *et seq*. Plaintiff also asserts claims for fraudulent misrepresentation, negligent misrepresentation, negligence, and replevin.

## Jurisdiction and Venue

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this district.

## Parties

5.      Plaintiff is an adult resident of Guatemala.

6.      Defendants are adult residents of the District of Columbia. They are married to each other, and they reside at 4328 Westover Place NW, Washington, DC  20016.

## Factual Allegations

7.      In approximately the summer of 1995, Defendants contacted Plaintiff and asked her to move from Guatemala to the United States to work as Defendants' live-in servant.

8.      Plaintiff does not speak English and has no formal education.

9.      Defendants offered to transport Plaintiff to the United States and pay Plaintiff $1000 per month.

10.      Plaintiff accepted Defendants' offer, and in approximately August 1995, Plaintiff travelled from her home in Guatemala to Defendants' house at 4328 Westover Place.

11.      At all times relevant to this action, Defendants resided at 4328 Westover Place NW, Washington, DC 20016.

12.     While Plaintiff worked for Defendants, she lived in a damp utility closet in the basement of Defendants' home. The room had no window or ventilation, and her "bed" consisted of a wooden box constructed on top of the basement sump pump.

13.     Plaintiff's regular job duties included: cooking, serving food, cleaning the house, washing laundry, ironing, childcare, shopping, and running errands.

14.     During the course of her employment, Plaintiff worked approximately 87 hours a week, on average.

15.     Defendants did not maintain true and accurate records of each hour, day, and week worked by Plaintiff, as required by 29 C.F.R. § 516 and D.C. Code § 32-1008.

16.     Plaintiff lived with and worked for Defendants approximately 6 – 9 months per year. Generally, she would return to Guatemala every approximately 6 months to visit her family and receive medical care.

17.     From approximately August 1995 to approximately July 2006, Defendants did in fact pay Plaintiff $1000 per month in cash for each month Plaintiff worked.

18.     From August 1, 1995 to September 30, 1996, the federal minimum hourly wage was $4.25, and the D.C. minimum hourly wage was $5.25. During this time, Defendants should have paid Plaintiff a minimum of approximately $456.75 per week for her work.

19.     From October 1, 1996 to August 31, 1997, the federal minimum hourly wage was $4.75, and the D.C. minimum hourly wage was $5.75. During this time, Defendants should have paid Plaintiff a minimum of approximately $500.25 per week for her work.

20.     From September 1, 1997 through July 2006, the federal minimum hourly wage was $5.15 per hour, and the D.C. minimum hourly wage was $6.15. During this time, Defendants should have paid Plaintiff a minimum of approximately $535.05 per week for her work.

21.     For Plaintiff's work from approximately August 1995 to approximately July 2006, Plaintiff should have been paid a minimum of approximately $184,126.80.

22.     For Plaintiff's work from approximately August 1995 to approximately July 2006, Defendants actually paid Plaintiff approximately $80,000.00.

23.     For Plaintiff's work from approximately August 1995 to approximately July 2006, Defendants owe Plaintiff approximately $104,126.80 in minimum wages.

24.     Some time in approximately 2005, Plaintiff's children took out a loan against Plaintiff's home in Guatemala. Plaintiff's children pledged the physical deed as collateral for this loan.

25.     At all times relevant to this action, Plaintiff believed that the right to exercise control of her home ultimately rested upon her possession of the physical.

26.     Plaintiff's extended family, including her many children and grandchildren, live in Plaintiff's home. Defendants were at all times aware of this.

27.     Plaintiff's only significant asset is her home. Defendants were at all times aware of this.

28.     At some point in 2006, Plaintiff's children could not pay the loan that had been taken out against Plaintiff's home.

29.     Plaintiff asked Defendants if they could loan Plaintiff 60,000 Quetzals, or approximately $7600.00, to pay off the balance of the loan.

30.     In approximately July 2006, Mr. Rossi traveled to Guatemala, paid the $7600.00 balance of the loan, and took possession of the physical deed to Plaintiff's home.

31.     After Mr. Rossi returned from Guatemala with the physical deed, Defendants told Plaintiff that she could get back the rights to her home by working for Defendants for free.

32.     Defendants told Plaintiff she needed to repay the $7600.00 loan, plus the cost of Mr. Rossi's airfare for his trip to Guatemala, plus the cost of three nights' hotel accommodation, plus

unspecified miscellaneous expenses Mr. Rossi allegedly incurred during his trip to Guatemala. Defendants never provided Plaintiff a sum certain of her alleged indebtedness.

33.     Plaintiff continued to work for Defendants so that she could secure the return of the physical deed to her home.

34.     Defendants did not pay Plaintiff for the next approximately 6.5 years — from approximately July 2006 to approximately November 2012.

35.     Over the course of those 6.5 years without pay, Plaintiff repeatedly asked if she had worked enough to earn the return of the physical deed to her home. Defendants always said no.

36.     Over the course of those 6.5 years without pay, Defendants repeatedly threatened Plaintiff that she would lose her home if she did not work harder.

37.     Over the course of those 6.5 years without pay, Defendants repeatedly threatened Plaintiff that she would lose her home if she did not continue to work for Defendants, or if she did not return from her periodic trips to Guatemala to work for Defendants.

38.     For example, Mrs. Rossi engaged in the following dialogue with Plaintiff on several occasions: "I don't know why you let your family live in my house." To which Plaintiff responded: "But it's my house." Mrs. Rossi's reply: "But it will be my house because you don't work [hard enough]."

39.     Over the course of those 6.5 years without pay, Plaintiff asked Defendants to pay her something so that she would have money for emergencies. On several occasions, Defendants responded to this request by saying "you have no rights in this country."

40.     Defendants made the statements referenced in Paragraphs 31–32; 35–39 willfully, wantonly, maliciously, and with an intent to coerce Plaintiff into indefinitely working without pay for Defendants.

41.    Plaintiff continued to work for Defendants because of  Defendants' statements in Paragraphs 31–32; 35–39.

42.    A reasonable person of the same background and in the same circumstances would have continued to work for Defendants in order to avoid the harm that Defendants threatened.

43.    Over the course of Plaintiff's 6.5 years without pay, she did in fact live in fear that Defendants would take her home and that her extended family would thereby become homeless.

44.    On several occasions over the course of Plaintiff's 6.5 years without pay, Plaintiff became very ill. On these occasions, Plaintiff asked Defendants to take her to the hospital or give her money so she could pay a doctor to treat her. Defendants denied each of these requests, each time saying they had no money.

45.    Plaintiff was at all times unaware she could call 911 and obtain transportation to a hospital and emergency medical treatment without prepayment.

46.    In February 2012, Plaintiff, then 73, contracted a severe case of pneumonia. She begged Defendants for money to pay for medical care, but was again denied. Eventually, a friend purchased a ticket for Plaintiff to travel to Guatemala so that she could receive free medical care.

47.    On information and belief, in February 2012, Plaintiff almost died of pneumonia in Defendants' basement.

48.    Defendants assumed a duty to provide medical care to Plaintiff when they wrongfully employed her without pay for extended periods.

49.    As a result of Defendants' actions, including their failure to provide medical care, Plaintiff suffered a great deal of pain.

50.    In November 2012, after an 8-month convalescence in Guatemala, Plaintiff returned to work for Defendants, hopeful that she could finally obtain the physical deed to her home. She

told Defendants that she thought she had paid off her debt, and that she needed to be paid some money.

51.     Defendants told Plaintiff that she had not paid off her debt, but that they would pay her $80 per week — or slightly less than $1 per hour.

52.     From November 2012 through January 2013, Defendants did in fact pay Plaintiff $80 per week in cash.

53.     From February 2013 through May 2013, Defendants slightly increased Plaintiff's "salary" to $500 per month — or slightly more than $1 per hour.

54.     On May 26, 2013, Plaintiff left Defendants' employ and returned to Guatemala.

55.     From July 2006 to July 23, 2007, the federal minimum hourly wage was $5.15 per hour, and the D.C. minimum hourly wage was $6.15. During this time, Defendants should have paid Plaintiff a minimum of approximately $535.05 per week for her work.

56.     From July 24, 2007 to July 23, 2008, the federal minimum hourly wage was $5.85, and the D.C. minimum hourly wage was $6.85. During this time, Defendants should have paid Plaintiff a minimum of approximately $595.95 per week for her work.

57.     From July 24, 2008 to July 23, 2009, the federal minimum hourly wage was $6.55, and the D.C. minimum hourly wage was $7.55. During this time, Defendants should have paid Plaintiff a minimum of approximately $656.85 per week for her work.

58.     From July 24, 2009 to the present, the federal minimum hourly wage was $7.25 per hour, and the D.C. minimum hourly wage was $8.25. During this time, Defendants should have paid Plaintiff a minimum of approximately $717.75 per week for her work.

59.     For Plaintiff's work from approximately July 2006 to May 26, 2013, Plaintiff should have been paid a minimum of approximately $142,623.45.

60.     For Plaintiff's work from approximately July 2006 to May 26, 2013, Defendants actually paid Plaintiff approximately $2640.00.

61.     For Plaintiff's work from approximately July 2006 to May 26, 2013, Defendants owe Plaintiff approximately $139,983.45 in minimum wages.

62.     The total amount Defendants owe Plaintiff in minimum wages for her work over the last 18 years is approximately: $244,110.25.

63.     At all times relevant to this action; Defendants failed to post a conspicuous notice explaining the FLSA and summarizing the DCMWA, as required by 29 C.F.R. § 516.4 and D.C. Code § 32-1009.

64.     Defendants took affirmative steps to deceive Plaintiff regarding her right to be paid, frequently telling her "you have no rights in this country."

65.     Defendants still possess the physical deed to Plaintiff's home.

66.     Defendants have no current right to maintain possession of the physical deed to Plaintiff's home.

67.     On information and belief, Defendants were at all times aware that they were required to pay Plaintiff the D.C minimum hourly wage.

## COUNT I
## FORCED LABOR IN VIOLATION OF THE TVPA
### (18 U.S.C. §§ 1589, 1595)

68.     Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

69.     Defendants knowingly obtained Plaintiff's labor or services by means of threats of serious financial, psychological, and reputational harm to Plaintiff and her family. 18 U.S.C. 1589(a)(2).

70.     Defendants knowingly obtained Plaintiff's labor or services by means of the abuse or threatened abuse of law or legal process. 18 U.S.C. 1589(a)(3).

71.     Defendants knowingly obtained Plaintiff's labor or services by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, if she did not perform such labor or services, she or her family would suffer serious financial, psychological, and reputational harm. 18 U.S.C. 1589(a)(3).

72.     Defendants' actions in violation of the TVPA were malicious, wanton, and willful.

73.     As a result of Defendants' actions, Plaintiff provided $244,110.25 in uncompensated labor.

74.     As a result of Defendants' actions, Plaintiff suffered emotional distress and physical pain.

75.     For their violations of the TVPA, Defendants are liable to Plaintiff for unpaid wages in the amount of $244,110.25, plus $500,000.00 as compensation for emotional distress and physical pain, plus $500,000.00 in punitive damages, plus court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.


## COUNT II
## FAILURE TO PAY MINIMUM WAGES UNDER THE FLSA
### (29 U.S.C. § 201 *et seq.*)

76.     Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

77.     Plaintiff was an "employee" of Defendants within the meaning the FLSA, 29 U.S.C. § 203(e)(1).

78.     Plaintiff was a "non-exempt" employee of Defendants within the meaning of the FLSA, 29 U.S.C. § 213.

79.     Defendants were "employers" of Plaintiff within the meaning of the FLSA,

29 U.S.C. § 203(d).

80.     The FLSA requires employers to pay non-exempt employees a minimum wage equal to

an amount set by Congress. 29 U.S.C. § 206(a)(1).

81.     The FLSA permits states to set a minimum wage higher than that provided for by the

FLSA. 29 U.S.C. § 218.

82.     Defendants violated the FLSA by failing to pay Plaintiff the D.C. minimum hourly wage.

83.     Defendants' violations of the FLSA were willful.

84.     For their violations of the FLSA, Defendants are liable to Plaintiff for unpaid minimum

wage compensation in the amount of $244,110.25, plus an equal amount as liquidated damages,

plus court costs, reasonable attorneys' fees and expenses, and any other relief deemed

appropriate by the Court.

## COUNT III
### FAILURE TO PAY MINIMUM WAGES UNDER THE DCMWA
### (D.C. Code § 32-1001 *et seq.*)

85.     Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

86.     Plaintiff was an "employee" of Defendants within the meaning of the DCMWA, D.C.

Code § 32-1002(2).

87.     Plaintiff was a "non-exempt" employee of Defendants within the meaning of the

DCMWA, D.C. Code § 32-1004.

88.     Defendants are "employers" within the meaning of the DCMWA, D.C. Code § 32-

1002(3).

89.     The DCMWA requires employers to pay non-exempt employees a minimum wage one

dollar higher than the federal minimum wage. D.C. Code § 32-1003(a).

90.     Defendants violated the DCMWA by failing to pay Plaintiff the D.C. minimum hourly wage.

91.     Defendants' violations of the DCMWA were willful.

92.     For their violations of the DCMWA, Defendants are liable Plaintiff for unpaid minimum wage compensation in the amount of $244,110.25, plus an equal amount as liquidated damages, plus court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

**COUNT IV**
**FRAUDULENT MISREPRESENTATION**

93.     Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

94.     Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39 were false.

95.     Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39 were in reference to material facts.

96.     Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39 were made with knowledge of their falsity.

97.     Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39 were made with an intent to deceive Plaintiff.

98.     As a result of Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39, Plaintiff provided $244,110.25 in uncompensated labor.

99.     As a result of Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39, Plaintiff suffered emotional distress and physical pain.

100.    For their fraudulent misrepresentations, Defendants are liable to Plaintiff for unpaid wages in the amount of $244,110.25, plus $500,000.00 as compensation for emotional distress

and physical pain, plus $500,000.00 in punitive damages, plus court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## COUNT V
## NEGLIGENT MISREPRESENTATION

101.    Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

102.    Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39 were false.

103.    In their communications to Plaintiff, Defendants omitted facts that, under the circumstances, they had a duty to disclose. These facts include: a) Plaintiff's right to possess her house independent of possession of the physical deed, b) Defendants' inability to seize Plaintiff's home and cause her family to become homeless, c) Plaintiff's right to be paid the D.C. minimum hourly wage, d) Plaintiff's right to utilize this country's judicial system to seek redress, and e) the availability of free or low-cost medical care.

104.    Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39, as well as their omissions in Paragraph 101, were in reference to material facts.

105.    Plaintiff reasonably relied on Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39, as well as their omissions in Paragraph 101.

106.    As a result of Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39, as well as their omissions in Paragraph 101, Plaintiff provided $244,110.25 in uncompensated labor.

107.    As a result of Defendants' statements to Plaintiff in Paragraphs 31–32; 35–39, as well as their omissions in Paragraph 101, Plaintiff suffered emotional distress and physical pain.

108.    For their negligent misrepresentations, Defendants are liable to Plaintiff for unpaid wages in the amount of $244,110.25, plus $500,000.00 as compensation for emotional distress and physical pain, plus court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## COUNT VI
## NEGLIGENCE

109.    Defendants, through wrongful means, caused Plaintiff to be dependent on them for

medical care.

110.    Defendants assumed a duty to provide Plaintiff reasonable medical care.

111.    Defendants breached that duty by denying any of Plaintiff's requests for medical

assistance.

112.    As a result of Defendants actions, Plaintiff needlessly suffered a great deal of emotional

distress and physical pain.

113.    For their negligence, Defendants are liable to Plaintiff for $500,000.00 as compensation

for emotional distress and physical pain.

## COUNT VI
## REPLEVIN

114.    Defendants have unjustly detained Plaintiff's goods and chattels, to wit: the physical deed

to Plaintiff's home in Guatemala of the value of $0.00 dollars. D.C. Code § 16-3702.

115.    Plaintiff claims that the same be taken from Defendant and delivered to her; or, if they

are eloigned, that she may have judgment of their value and all mesne profits and damages,

which she estimates at $10,000 dollars, besides costs. D.C. Code § 16-3702.

116.    In Attachment #1 to this Complaint, undersigned counsel avers, as is required by D.C.

Code § 16-3703, that:

> (1)      according to affiant's information and belief, Plaintiff is entitled to recover
>
> possession of chattels proposed to be replevied, being the same described in the
>
> Complaint;
>
> (2)      Defendants detain the chattels; and

(3)     The chattels were not subject to the seizure or detention and were not taken upon a writ of replevin between the parties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants, jointly and severally, in Plaintiff's favor on all counts, and grant the following relief:

a.     Award Plaintiff unpaid minimum wages of $244,110.25 pursuant to 29 U.S.C. § 216; D.C. Code § 32-1012; Defendants' violations of the TVPA; Defendants' fraudulent misrepresentations; and Defendants' negligent misrepresentations;

b.     Award Plaintiff liquidated damages equal to her unpaid minimum wages — or $244,110.25 — pursuant to 29 U.S.C. § 216 and D.C. Code § 32-1012;

c.     Award Plaintiff $500,000.00 as compensation for emotional distress and physical pain she suffered as a result of Defendants' violations of the TVPA; Defendants' fraudulent misrepresentations; Defendants' negligent misrepresentations; and Defendants' negligence.

d.     Award Plaintiff $500,000.00 as punitive damages for Defendants' violations of the TVPA and Defendants' fraudulent misrepresentations;

e.     Award Plaintiff possession of the physical deed to her home in Guatemala;

f.     Enter a declaratory judgment that Plaintiff is not indebted to Defendants;

g.     Enter a declaratory judgment that Defendants obtained Plaintiff's services by false pretenses, a false representation, or actual fraud;

h.     Enter a declaratory judgment that Plaintiff's claims are excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A);

i.      Enter a declaratory judgment that Plaintiff's claims against Defendants are for

willful and malicious injuries caused by Defendants;

j.      Enter a declaratory judgment that Plaintiff's claims are excepted from discharge

pursuant to 11 U.S.C. § 523(a)(6);

k.      Award Plaintiff her reasonable attorney's fees, expenses and costs of court;

l.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

m.      Award any additional relief the Court deems just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.


Date: 06/12/2013                                    Respectfully Submitted,

                                                    _/s/ Justin Zelikovitz_____
                                                    Justin Zelikovitz, #MD17567
                                                    D.C. Employment Justice Center
                                                    1413 K Street, NW, 5th Floor
                                                    Washington, DC 20005
                                                    Phone: (202) 645-6356
                                                    Fax: (202) 828-9190
                                                    jz@dcejc.org